**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SEABOARD SURETY COMPANY, | No. 06-CV-0134-PHX-SMM |
| Plaintiff, | **ORDER** |
| vs. | |
| GRUPO MÉXICO, S.A.B. de C.V., | |
| Defendant. | |

Before the Court is Defendant Grupo México, S.A.B. de C.V.'s Motion to Dismiss, filed January 23, 2009. (Dkt. 136). Plaintiff Seaboard Surety Company responded on February 9, 2009. (Dkt. 138). Defendant replied on February 27, 2009. (Dkt. 141). In accordance with the parties' request, oral argument was held on October 19, 2009, and the Court took the matter under advisement. (Dkt. 147). After consideration of the parties' briefing and representations at the oral argument, the Court will grant the motion and dismiss the case.

## BACKGROUND

### A.    Factual Background

Plaintiff Seaboard Surety Company ("Seaboard") is a wholly-owned subsidiary of St. Paul Fire and Marine Insurance Company ("St. Paul Surety") and is licensed to conduct business as a surety in the State of Arizona. (Dkt. 133 at ¶ 1). Defendant, Grupo México, S.A.B. de C.V. ("Grupo México"), a Mexican corporation, is the parent company of

ASARCO Incorporated ("ASARCO").  (Id. at ¶¶ 2-3).  ASARCO owns and operates an integrated copper-mining, smelting, and refining business located in Arizona.  (Id. ¶ 3). ASARCO conducted mining operations on land governed by the United States Department of the Interior, Bureau of Indian Affairs ("BIA").  The BIA required the reclamation bonds that were issued by Seaboard.  (Id. at ¶¶ 14-15).

In 1959 and 1960 ASCARCO entered into multiple land and business leases for mining activities on the San Xavier portion of the Tohono O'odham Indian Reservations in Arizona ("Mission Mines).  (Id. at ¶ 13).  Seaboard issued multiple surety bonds to ASARCO that allowed it to mine land on the Tohono O'odham Reservation in accordance with BIA requirements.  (Id. at ¶¶ 14-15).  On October 19, 1993, Seaboard and ASARCO entered into a General Agreement of Indemnity ("1993 GAI") with Seaboard as the surety and ASARCO as the principal.  (Id. at ¶ 15, Dkt. 133, Ex. C).  The 1993 GAI includes a "Collateral Provision" stating that Seaboard may establish a reserve fund to cover "any contingent claim or claims, loss, costs, attorneys' fees and/or other expenses in connection with any such Bond" and ASARCO will pay to Seaboard "funds in an amount equal to such reserves" as collateral. (Dkt. 133 at ¶ 44; Dkt. 133, Ex. C, ¶ 7).  From 1993 to the end of 2000, the relationship between Seaboard and ASARCO remained unchanged.

On January 16, 2001, the Bureau of Land Management ("BLM") and the BIA sent a letter to ASARCO ordering the cessation of mining and stripping operations within the San Xavier Reservation and gave ASARCO thirty (30) days from receipt of the notice to acquire "a revised business lease bond of $7 million, and revised mining lease bonds of $760,000 and $3.5 million, respectively," in order to continue mining operations.  (Dkt. 133 at ¶¶ 16-18; Dkt. 54, Ex. A).  On February 15, 2001, Kevin McCaffrey, in-house counsel for ASARCO in New York, sent a memorandum to Daniel Tellechea Salido of Grupo México stating:

> It is standard practice in the insurance industry for a surety to require a parent guarantee for bonds that the surety issues.  If Asarco's financials were stronger it may have been able to negotiate a bond without a guarantee, but it is unlikely.
> In this circumstance, the St. Paul Surety Company has issued a number of other bonds on the assumption that a guarantee would be forthcoming.  St. Paul is unwilling to issue any new bonds without a guarantee of all previously

issued bonds. Currently, St. Paul is the only surety willing to issue Asarco bonds, with or without a guaranty.

(Dkt. 133 at ¶¶ 24-26; Dkt. 87, Ex. 10).  On the same day, Hector Garcia de Quevedo, Managing Director of Grupo México, and Sergio M. Firrer, Grupo México's General Counsel, signed as "Corporate Indemnitor" a four-page, seventeen-section 2001 General Agreement of Indemnity ("2001 GAI") provided by Seaboard.  (Dkt. 133 at ¶¶ 27-28, 30; Dkt. 87, Ex. 9).  After signing, Grupo México sent the 2001 GAI to ASARCO's Risk Manager, Carmel Loughman, in New York.  (Dkt. 133 at ¶ 30).  Section 3 of the 2001 GAI applied to "any and all BONDS requested by the CONTRACTOR, whether or not such BONDS were executed before or following the date of this Agreement."  (Dkt. 87, Ex. 9, ¶ 3).

The next morning, Ms. Loughman sent the following e-mail to Grupo México (including Daniel Tellechea, and Hector Garcia de Quevedo and copying Kevin McCaffrey).  (Dkt. 133 at ¶ 32; Dkt. 87, Ex. 9).  Ms. Loughman's February 16th email states in full:

> I received the executed General Agreement of Indemnity. I have not given this document to St. Paul because I understand that you would prefer to sign a General Agreement of Indemnity/parental guarantee **only** with respect to the Mission bonds.  You would then like to meet with the St. Paul in Mexico to discuss the issue of the broader indemnity.  With this understanding, the underwriter at St. Paul has agreed to issue the Mission bond today when he receives from you a letter that states:

> "Grupo Mexico will indemnify St. Paul Surety on behalf of Asarco Incorporated for the three Mission reclamation bonds issued to the USA, Department of the Interior, Bureau of Indian Affairs in the amounts of $7.0 million, $760,000, and $3.5 million, respectively."

> If you concur with this understanding, please fax this letter to me at 212.510.1910 as soon as possible so that these bonds can be sent by Federal Express to Doug McAllister, Tucson, today.

(Id.) (emphasis in the original).  In response to Loughman's e-mail, Daniel Tellechea and Hector Garcia de Quevedo addressed to Paul Salmon, underwriter for St. Paul Surety, the following one-sentence letter which is an exact replica of the middle paragraph from Loughman's February 16th email:

> Grupo México will indemnify St. Paul Surety on behalf of A[SARCO] Incorporated for the three Mission reclamation bonds issued to the USA,

Department of Interior, Bureau of Indian Affairs in the amounts of $7.0 million, $760,000, and $3.5 million, respectively.

(Dkt. 133 at ¶ 33; Dkt. 133, Ex. A) ("letter agreement"). The letter agreement only applied to the three bonds issued for the Mission Mines and was not a General Agreement of Indemnity for all bonds issued by Seaboard to ASARCO. (Dkt. 133 at ¶ 34). Grupo México faxed this letter directly to ASARCO's offices in Arizona and to Ms. Loughman for delivery to Seaboard. (Id. at ¶¶ 33, 35). On February 16, 2001, upon receipt of this letter, Seaboard issued to ASARCO the three Mission Bonds at the higher requested rates. (Id. at ¶ 37; Dkt. 133, Ex. B).[1] The reclamation bonds included bonds No. 420688 in the penal sum of $7 million dollars, No. 420699 in the penal sum of $760,000, and No. 420670 in the penal sum of $3.5 million dollars. (Dkt. 133 at ¶ 8; Dkt. 133, Ex. B).

On May 7, 2003, Seaboard terminated Bond No. 420669 in the amount of $760,000. (Dkt. 54, Ex. C.) On August 7, 2003, BIA and Seaboard were sued by the San Xavier Allottees, owners of the land covered by Bond #420669 (Dkt. 133 at ¶ 38). The San Xavier Allottees sought $11.26 million or the penal sums of the Mission Bonds (Id.). In January 2005, the BIA cancelled ASARCO's Tract I mining lease (No. 454-2-60) for failure to replace Bond No. 420669 that had been terminated by Seaboard in May 2003. (Dkt. 133, ¶ 57; Dkt. 54, Ex. E). ASARCO appealed the termination. (Dkt. 54,Ex. K.)

In February 2005, Seaboard made demands on ASARCO and Grupo México for reimbursement of attorneys' fees and costs, as well as engineering fees incurred in the defense of the Allotee Lawsuit (Dkt. 133 at ¶¶ 40,42; Dkt. 54, Ex. F). Although Seaboard demanded payment for the costs it incurred, Seaboard never received payment from either ASARCO or Grupo México. (Dkt. 133 at ¶¶ 51-52). Following this action, on March 30, 2005, the BIA sent a letter to Seaboard informing it that the "BIA has not concluded that ASARCO has failed to meet its reclamation obligations" and only if it has failed to do so

---

[1]When the bonds were issued, the BIA was the obligee, Seaboard was the obligor, and ASARCO was the principal. Because Seaboard was indemnified by Grupo México, Seaboard was also the indemnitee and Grupo México was the indemnitor.

"will the BIA make demand on the bonds." (Doc. 54, Ex. I.) After two years of litigation, the suit was dismissed on April 28, 2005 because the organization did not have standing to bring the lawsuit. (Dkt. 54, Ex. H).

In August of 2005, ASARCO filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division. (Dkt. 133 at ¶ 54). On July 28, 2006, the BIA filed a Proof of Claim against ASARCO in these proceedings. (Id. at ¶ 58; Dkt. 54, Ex. J). The BIA and ASARCO later reached a settlement agreement on ASARCO's obligations for reclaiming the land. (Dkt. 133 at ¶ 58; Dkt. 119, Ex. A). A requirement of the BIA/ASARCO agreement was that the Mission Bonds issued by Seaboard must be released upon a deposit of $33 million by ASARCO (Dkt. 133 at ¶ 59). Also, the agreement would only go into effect if Seaboard made a payment of $1.3 million into an escrow account that would be used for reclaiming the Mission Mines. (Id. at ¶¶ 59, 64). Seaboard and ASARCO also entered into a separate settlement agreement that Seaboard would make the $1.3 million payment into the escrow account on behalf of ASARCO. (Id. at ¶ 63; Dkt. 119, Ex. B).[2] Both the BIA/ASARCO and ASARCO/Seaboard settlement agreements were approved by the bankruptcy court after a period for filing objections passed. (Dkt. 133 at ¶ 67; Dkt. 119, Exs. C-D).

On May 30, 2008 Seaboard provided formal notice to Grupo México that its claim for indemnification related to its obligations to the BIA on behalf of ASARCO under the Mission Bonds was liquidated in the amount of $1.3 million dollars. (Dkt. 133 at ¶ 73). Seaboard tendered its claim to Grupo México and made a demand for payment of that sum, as well as for all fees and costs related to the Allotee Lawsuit. (Id.) On May 30, 2008, Grupo México responded to Seaboard's notice and tender, and refused to make payment to

---

[2] The BIA and ASARCO filings in the Bankruptcy Court refer to "St. Paul Travelers Insurance Company and its affiliates and subsidiaries" collectively as "St. Paul." (Dkt. 119, Ex. A). This includes Seaboard Surety.

Seaboard for either the $1.3 million dollar payment by Seaboard or the expenses and fees incurred by Seaboard in connection with the Allottee Lawsuit. (Id. at ¶ 74).

Seaboard's Second Amended Complaint presents two claims on which it is seeking relief: (1) a breach of contract claim alleging that Grupo México failed to perform under the indemnity agreement (Id. at ¶¶ 75-82), (2) an unjust enrichment claim alleging that Grupo México unjustly enriched itself by promising to indemnify Seaboard, thus inducing Seaboard to expose itself to risk it otherwise would not have taken. (Id. at ¶¶ 83-91). In response to the Second Amended Complaint, Grupo México filed its Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 136).

**B.    Procedural History**

This action was originally filed in the Superior Court of Arizona, Maricopa County, on July 28, 2005, before being removed to this Court on January 6, 2006 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. 1).[3] Grupo México first sought dismissal of this action on January 11, 2006 on the ground that the Court lacked personal jurisdiction. (Dkt. 9-10). Seaboard responded with a Motion for Extension of Time to Respond to Grupo México's Motion to Dismiss and Motion to Permit Jurisdictional Discovery. (Dkt. 12). On May 17, 2006, the Court granted the extension and permitted jurisdictional discovery. (Dkt. 19). During the course of discovery, Grupo México conceded personal jurisdiction and Seaboard moved the Court to permit discovery beyond the issue of personal jurisdiction. (Dkt. 46). On December 14, 2006, the Court granted Seaboard's motion and found that personal jurisdiction existed over Grupo México. (Dkt. 48).

---

[3]Seaboard's initial Complaint named ASARCO, LLC, incorrectly identified as ASARCO, Inc., and Grupo México as defendants. ASARCO, LLC declared bankruptcy on August 9, 2005. Seaboard subsequently filed an Amended Complaint on October 13, 2005 naming only Grupo México. On January 6, 2006, Grupo México removed the case to federal court.

Grupo México then moved to dismiss for lack of subject matter jurisdiction on January 26, 2007. (Dkt. 53-54.) The Court denied this motion to dismiss as it found that Seaboard had advanced two distinct theories in its Amended Complaint and Cross-Motion for Summary Judgment. (Dkt. 128). After holding a status conference on November 24, 2008, the Court gave Seaboard until December 5, 2008 to file a Second Amended Complaint. (Dkt. 132). Seaboard filed its Second Amended Complaint on that date. (Dkt. 133). Grupo México then filed a third motion to dismiss, this one based upon failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt 136).

## STANDARD OF REVIEW

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails to state a claim, the defendant may move in a written motion, separate from the responsive pleading, that the court dismiss the claim for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Even though a complaint subject to dismissal for failure to state a claim is not required to provide "detailed factual allegations," in order for the plaintiff to meet its burden, it must present more than labels and conclusions, or a formulaic recitation of the elements of the asserted cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[4] To survive a motion to dismiss for failure to state a claim, a plaintiff must state enough facts so that the claim is plausible on its face. Id. at 570. The Supreme Court does not require a

---

[4]Prior to Twombly, the standard of review for a Rule 12(b)(6) motion was established by Conley v. Gibson, 355 U.S. 41 (1957). The Court in Conley held that a complaint may only be dismissed pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46; Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). After Twombly, however, it was unclear if the new plausibility standard applied to all civil complaints or only antitrust complaints. Recently, the Supreme Court clarified the scope of the Twombly holding by reiterating that it applied to all civil actions. Ashcroft v. Iqbal, 566 U.S.—,—, 129 S.Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'").

heightened pleading standard, just enough facts to push the claim across the threshold of conceivable to plausible. Id.

When deciding a Motion to Dismiss, a court is bound by the facts plead in the complaint with a limited exception for exhibits that are attached to the complaint, exhibits incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); Fed. R. Civ. P. 10(c). A court will treat all allegations of material fact in the complaint as true and construe the complaint in the light most favorable to the plaintiff. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). But "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001) (citing Associated Gen. Contractors v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998)).

If the court finds that the plaintiff does not allege enough facts to support a cognizable legal theory, the court may dismiss the claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985)). When exercising its discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citation omitted).

## DISCUSSION

### A.    Consideration of Documents Outside the Pleadings

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), if a district court considers evidence outside the pleadings, it must normally convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment, and give the nonmoving party an opportunity to file a response. See Fed. R. Civ. P. 12(d); Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998), superceded by statute on other grounds as recognized in Abrego Abrego v. The

- 8 -

Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908 (citations omitted).

Documents not attached to the complaint may be incorporated by reference into the complaint if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. (citations omitted); see also Parrino, 146 F.3d at 706 ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's claim necessarily relies."); Van Buskirk v. CNN, 284 F.3d 977, 980 (9th Cir. 2002) (district court may rely on doctrine of "incorporation by reference" to consider documents that are referenced extensively in the complaint and accepted by all parties as authentic). The district court may treat such a document as part of the complaint, and thus, assume that its contents are true for purposes of a Rule 12(b)(6) motion to dismiss. Ritchie, 342 F.3d at 908. For example, the doctrine of incorporation by reference may apply when a plaintiff's claim about stock fraud is based on the contents of SEC filings or when a plaintiff's claim about insurance coverage is grounded in the contents of a coverage plan. See e.g., In re Silicon Graphics Inc. Secs. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (stock fraud); Parrino, 146 F.3d at 705-06 (insurance coverage).

In the present case, Seaboard attaches several documents to its Second Amended Complaint — the letter agreement, Reclamation Bonds, and the 1993 GAI. (Dkt. 133, Exs. A-C). These documents can be considered by the Court because they are attached to the pleading. Seaboard also makes reference in its Second Amended Complaint to other documents previously submitted to this Court, including filings from the ASARCO bankruptcy proceedings in Texas. (Id.) Reference to these documents does not require that the Court convert Grupo Mexico's 12(b)(6) motion into a Rule 56 motion for summary judgment because the documents can be incorporated by reference. The documents mentioned in Seaboard's Second Amended Complaint are either referenced extensively

therein or form the basis of Seaboard's breach of contract and unjust enrichment claims. Furthermore, the authenticity of the documents is not disputed by either party.

**B.    Breach of Contract**

Failure to perform when a contractual obligation is due is a breach of contract. See Franconia Assocs. v. United States, 536 U.S. 129, 142-43 (2002); Restatement (Second) of Contracts § 235(2) (1981). In its Second Amended Complaint, Seaboard alleges that Grupo México breached the terms of the letter agreement by refusing to indemnify Seaboard for the $1.3 million dollar payment made into the escrow account in favor of the BIA. (Dkt. 133 at ¶¶ 75-82). In its Motion to Dismiss, Grupo México contends that Seaboard has failed to state a breach of contract claim for three reasons: (1) Seaboard acted as a volunteer when it made its payment to ASARCO as Seaboard was under no legal obligation; (2) in making this payment, Seaboard failed to assert defenses to its theoretical liability under the bonds, thereby extinguishing any indemnification claim; and (3) Seaboard's payment to ASARCO does not fall within the specific terms of the letter agreement. (Dkt. 137 at 4-7).

*1. Seaboard Acting as a Volunteer*

A surety that pays a debt that it is not legally bound to pay is a volunteer, and those payments are not subject to recovery. Lawless v. St. Paul Fire & Marine Ins. Co., 100 Ariz. 392, 401, 415 P.2d 97,103 (1966). At the time of the payment, it must appear that the principal himself was under a legal obligation to pay. Grupo México argues that Seaboard fails to plead in its Second Amended Complaint that its payment to ASARCO was pursuant to any legal action, demand, or claim made by ASARCO or the BIA. (Dkt. 141, 3:21-24). According to Grupo México, the BIA never asserted any claim on the Mission Bonds. (Dkt. 137, 5:26-28; Dkt. 141, 3:21-4:4, 4:16-20). Seaboard could only have an obligation to make a payment to the BIA under the Mission Bonds, and then only if ASARCO failed to fulfill its obligation to reclaim. (Id.). In the absence of a legal duty to pay, Seaboard acted as a volunteer and cannot seek indemnification from Grupo México. (Dkt. 137, 4:21-22).

In response, Seaboard acknowledges that before a surety and principal have a duty to perform, there must be a declared default by the obligee on the bonds, the BIA. Seaboard

argues that paragraphs 57-58 of its Second Amended Complaint allege that ASARCO was in default of its mining and reclamation obligations beginning in 2005. (Dkt. 138, 3:12-17; 2d Amend. Compl. at ¶¶ 57-58).[5] At oral argument, Seaboard stated that paragraph 57 was based upon a January 5, 2005 Order of Cancellation from the BIA in which the BIA cancelled the Tract I mining lease and made demand on ASARCO to reclaim Tract I. (Dkt. 138, 3:18-4:3,7:11-17; Dkt. 54, Ex. E). Seaboard argues that this cancellation by the BIA of the underlying agreement and the demand made on ASARCO to begin reclamation was a declaration of default by the BIA and triggered its obligation as the surety to investigate the claim and respond. (Id.) Consequently, Seaboard's $1.3 million dollar payment was in satisfaction of ASARCO's obligations under the Mission Bonds. However, Seaboard's argument lacks merit upon a closer examination of the January 5, 2005 Order of Cancellation and several subsequent communications from the BIA.

According to the Order of Cancellation, ASARCO was issued a "Reminder of Missed Quarterly Payments as to Mining Leases for San Xavier Mission Mine Located on the Tohono O'odham Nation Reservation" on October 14, 2004. (Dkt. 54, Ex. E, p.1). The Reminder stated that as of September 17, 2004, ASARCO was in arrears in paying the quarterly minimum annual royalty payment for the preceding quarter in the amount of $75,000. (Id.) When no payment was received from ASARCO, a "Notice of Default and Non-Compliance as to Mining Leases for San Xavier Mission Mine Located on the Tohono O'odham Nation Reservation" was issued on October 26, 2004 announcing a cancellation of the lease if ASARCO failed to pay the entire amount due within thirty (30) days of receipt of the Notice. (Id.) Since no action was taken by ASARCO, the BIA cancelled the lease and

---

[5]Paragraph 57 of the Second Amended Complaint reads: "In the filings within the Bankruptcy Court, the BIA and ASARCO acknowledge that the United States formally cancelled the Tract I mining lease on the Mission Mines, which included a demand upon ASARCO to reclaim Tract I of the Mission Mines on January 5, 2005." (2d Amend. Compl. ¶ 57).

made demand on ASARCO to reclaim the land covered by the lease and initiate the reclamation process within thirty (30) days of receipt of the Order of Cancellation. (Id., p.2).

Approximately one month later, on February 3, 2005, Seaboard made a collateral demand upon ASARCO and Grupo México for $11,460,000.00. (Dkt. 54, Ex. F). This amount represented the amount of a reserve established by Seaboard for anticipated losses and expenses related to the Mission Reclamation Bonds. (Id.) Upon learning of the position taken by Seaboard in response to its Order of Cancellation, the BIA issued a letter on March 30,2005 to Seaboard seeking to clarify any ambiguity in that cancellation order. (Dkt. 54, Ex. I).

In the March 30, 2005 letter, the BIA reaffirmed the cancellation action it had taken and went on to state:

> First, the cancellation of the lease and demand made upon ASARCO to claim the mined area was made solely upon ASARCO, which has the initial and primary responsibility to reclaim the mined area. *Only in the event that ASARCO fails to meet this responsibility and defaults on this or other of its obligations will the BIA made demand upon the bonds.* Second, as of this date the BIA has not concluded that ASARCO has failed to meet its reclamation obligations, owing to the fact that the parties in Arizona are currently in the midst of negotiations and other deliberations which they hope may resolve the outstanding reclamation issues.

(Id., p. 1) (emphasis added). The BIA again confirmed in a August 2007 letter that "at this time the BIA has not determined ASARCO to be in default of its reclamation obligations at the San Xavier Mission Mine." (Dkt. 98, Ex. F, p.1). This letter went on to state as follows:

> We can also confirm that at this time the BIA has neither made demand upon Seaboard Surety Company to initiate reclamation of the San Xavier Mission Mine, nor has otherwise required Seaboard to pay any sums to the obligee pursuant to the terms of the reclamation bond instruments. . . Finally, examples of events that would need to occur, *inter alia*, before the BIA makes demand upon Seaboard to provide funds for reclamation pursuant to the bonds, are principally (1) ASARCO's express refusal to undertake the necessary reclamation work, and (2) ASARCO's financial inability to undertake the necessary reclamation work.

(Id., p.1-2). Although Seaboard construes this Order of Cancellation as a demand by the BIA, the latter communications from the BIA confirm that no demand was ever made. Both the March 2005 and August 2007 letters from the BIA make clear that ASARCO was not yet in default of its reclamation obligations as they related to the San Xavier Mission Mine.

(Dkt. 54, Ex. I; Dkt. 98, Ex. F). Only in the event of a default by ASARCO of its reclamation obligations would the BIA make demand upon the bonds.

In its briefing and representations in court, Seaboard appears to view cancellation of the bond and a declaration of default as synonymous. However, the BIA's Order of Cancellation was distinct from a statement by the BIA that ASARCO was in default of its reclamation obligations, as required by the condition in the reclamation bonds. Because the Court finds that Seaboard acted voluntarily when it settled its liabilities with the BIA and ASARCO, Seaboard has extinguished its right to recover its voluntary payment under the letter agreement.

Additionally, Seaboard argues that a surety has discretion to settle claims without waiving any right to indemnification. (Dkt. 138, 7:23-26). Seaboard asserts that a surety's obligation to litigate a claim is less stringent where an indemnity contract exists and the indemnitor has full knowledge of the pending claims and proposed settlement and is given a chance to object. (Id. 9:1-4). In such a situation, indemnitee must only show potential liability of the principal when seeking indemnity for a settlement. See MT Builders, L.L.C. v. Fisher Roofing Inc., 219 Ariz. 297, 308, 197 P.3d 758, 769 (Ct. App. 2008); 41 Am. Jur. 2d Indemnity § 27 (2005). Seaboard contends that Grupo México had full knowledge of the proposed settlements in the bankruptcy court. (Dkt. 138, 9:15-16). As a party to ASARCO's bankruptcy, Grupo México was placed on notice of the bankruptcy court filings, including the proposed BIA/ASARCO and ASARCO/Seaboard settlements. (Id. 9:16-20). However, Grupo México chose not to object and thus, it is liable to indemnify Seaboard. (Id. 9:23-10:10).

Grupo México responds that it learned of the ASARCO/Seaboard settlement only after it was filed with the bankruptcy court. (Dkt. 141, 5:8-9). Grupo México received no prior notice from Seaboard that ASARCO or the BIA had asserted a claim on the Mission Bonds, or that Seaboard was negotiating a settlement with ASARCO. (Id. 5:9-12). Even if such knowledge could be imputed to Grupo México, it argues that knowledge of the settlement

after its execution does not change the voluntary nature of Seaboard's payment. (Id. 4:24-5:6).

The Court must consider the right of an indemnitee to recover against an indemnitor when, before liability is determined, the indemnitee settles an action against it by a third party. "[W]hen an indemnitee settles a lawsuit covered by an indemnity agreement, it may obtain indemnity from its indemnitor if it gave the indemnitor notice of the action and an opportunity to defend and demonstrates the decision to settle was, under the circumstances, reasonable and prudent." MT Builders, 219 Ariz. at 308, 197 P.3d at 769(citations omitted). If these conditions are satisfied, the indemnitee may obtain indemnity by showing only potential liability to the third person; the indemnitee need not show that it was actually liable. Id.; see also United Servs. Auto. Ass'n v. Morris, 154 Ariz. 113, 120, 741 P.2d 246, 253 (1987).

However, there is an important qualification to the above approach. "The indemnitee is only entitled to indemnity if the third party's action was covered by the indemnity agreement." MT Builders, 219 Ariz. at 308, 197 P.3d at 769; see also Cunningham v. Goettl Air Conditioning, Inc., 194 Ariz. 236, 242, 980 P.2d 489, 495 (1999). An indemnitor is still entitled to dispute whether the indemnity agreement applies to the action. MT Builders, 219 Ariz. at 308, 197 P.3d at 769.

The Court fails to find, as Seaboard argues, that it could extinguish its obligations under the bonds because it was exposed to potential liability, thus allowing Seaboard to settle without being a volunteer. As discussed above, Seaboard was not under a legal obligation to perform on the bonds. Seaboard does not allege that it received notice from the BIA that ASARCO had breached its reclamation obligations–an express condition required for any claim to recover on the bonds. (Dkt.133, Ex. B ("It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal [ASARCO] a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee [BIA] to the Surety [Seaboard].")). Seaboard was only exposed to potential liability for recovery on the

reclamation bonds after the express condition occurred. Because the events required by the express condition never occurred, Seaboard had no potential liability under the bonds.

The Court finds that because Seaboard acted voluntarily and without legal obligation, it has failed to state sufficient facts that make its breach of contract claim plausible on its face.

### 2. Condition Precedent as Complete Defense

Even assuming that a claim was made on the Mission Bonds, Grupo México contends that Seaboard's payment is still voluntary due to its failure to assert certain defenses to payment. (Dkt 137, 5:11-19; Dkt. 141, 5:22-24). Grupo México asserts that the Mission Bonds made it a condition precedent that Seaboard receive a statement of any breach by ASARCO. (Dkt. 137, 5:20-22; Dkt. 141, 6:2-4). Having failed to allege that it received any such statement, Seaboard waived a complete defense to a claim on the Mission Bonds. (Dkt. 137, 5:22-26).

An indemnitee that fails to avail itself of a complete defense against the underlying action, such that it would have avoided liability, vitiates its right to recover its losses. Lawless, 100 Ariz. at 401, 415 P.2d at 103(citations omitted). One example of a complete defense is that a condition precedent required for a duty to perform has not yet occurred. Therefore, performance of a contractual duty, which is subject to a condition, cannot come due until the event occurs or the condition is excused. Restatement (Second) of Contracts § 225(a); see also Yeazell v. Copins, 98 Ariz. 109, 114, 402 P.2d 541, 544 (1965) (explaining that one condition to receive statutory retirement benefits is that the employee must complete twenty years of service, otherwise, the city is not obligated to perform).

The Mission Bonds issued by Seaboard provide express conditions and obligations of the BIA, ASARCO and Seaboard. (Dkt. 133, Ex. B). Express condition five states that:

> It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal [ASARCO] a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee [BIA] to the Surety [Seaboard] and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

(Id. ¶ 5).  This condition means that Seaboard is not obligated to make a payment with respect to the reclamation bonds until thirty days after the BIA provides Seaboard with written notice of ASARCO's breach.

Seaboard contends that as a surety, its liability under the Mission Bonds was primary and arose immediately upon any default by ASARCO of its reclamation obligations.  (Dkt. 138 at 6:28-7:2).  Seaboard cites Citibank (Arizona) v. Van Velzer, for the premise that a surety has primary liability and that a surety is jointly and severally liable with the principal to perform the obligations created by the contract.  194 Ariz. 358, 361, 982 P.2d 833, 836 (Ct. App. 1998) (citations omitted).

Grupo México, however, asserts that Seaboard failed to allege that it received written notice from the BIA that ASARCO had breached its obligations under the reclamation bonds. (Dkt. 137 at 5).  Because there was a condition precedent in the contract and the condition was not satisfied, the Court finds that the obligation had not yet arisen when Seaboard performed.  With respect to the reclamation bond contract, no obligations had been created. Until the BIA provided Seaboard with written notice, Seaboard was not obligated to perform.

*3. Failure to Comply with the Terms of the Letter Agreement*

Finally, Grupo México argues that Seaboard's payment to ASARCO falls outside the scope of the letter agreement because Seaboard agreed to indemnify payments on behalf of ASARCO to the BIA, and not payments made to ASARCO. (Dkt. 137, 6:19-24; Dkt. 141, 6:27-7:1).  Seaboard and Grupo México did not agree to pay ASARCO for its reclamation work at the Mission Mine.  (Dkt. 137, 6:25-26).

In response, Seaboard points to a footnote in the BIA's motion to approve its settlement with ASARCO, filed in the bankruptcy court, which states that "St. Paul will pay $1.3 million to ASARCO for, *inter alia*, facilitating the United States' release of certain bonds related to the Mission Mine and for ASARCO's agreement that certain other bonds can 'flow through' the bankruptcy and not be subject to the discharge provisions of the Bankruptcy Code." (Dkt. 138 at 4; Dkt. 119, Ex. A, Motion to Approve, p.11, n.12).  However, this footnote does not support Seaboard's claim that its payment falls within the

letter agreement's terms. Indeed, Seaboard is not even a party to the BIA/ASARCO settlement and cannot be compelled by the BIA to make the payment. Moreover, the BIA's characterization of Seaboard's payment demonstrates that the payment was to ASARCO rather than on behalf of ASARCO. It also refutes Seaboard's allegation that the $1.3 million dollar payment was only in satisfaction of ASARCO's reclamation obligations under the three Mission Bonds at issue in the present case. Rather, under the ASARCO/Seaboard settlement agreement, Seaboard's $1.3 million dollar payment to ASARCO compromises claims relating to four other bonds not at issue in this case. (Dkt. 119, Ex. B, Settlement Agreement, pp. 1-2, ¶ B (defining Mission Bonds to include bond numbers 420668, 420669, 420670 at issue in the present litigation, as well as bond numbers 143432, 297126, 297127, and 396702 not at issue here)).

Second, Seaboard points to an exhibit to the settlement agreement, a release letter (Dkt. 138 at 4; Dkt. 119, Ex. A, Release). The BIA/ASARCO settlement agreement states that the release letter will issue once ASARCO has deposited $33 million into an escrow account. (Dkt. 119, Ex. A, Settlement Agreement, p.5, ¶ 5b). The release letter's issuance is not conditioned on any action by Seaboard. Although the release letter states that Seaboard will contribute $1.3 million to the escrow account, Seaboard is not a party to the settlement between the BIA and ASARCO and cannot be compelled by the BIA to pay ASARCO.

Finally, Seaboard alleges that the payment was effectively made to the BIA because the funds ended up in an escrow account that ASARCO was required to establish under the BIA/ASARCO settlement agreement. (Dkt. 138, 14:4-7; Dkt. 133 at ¶¶ 61, 63). However, this argument lacks merit. Under the BIA/ASARCO settlement agreement, an escrow account in the amount of $33 million was established "for the purpose of funding the implementation of the mine reclamation component of the agreed mining and reclamation plan ("MARP")". (Dkt. 119, Ex. A, Settlement Agreement, p.7, ¶ 6.g.). The settlement agreement also states that "[a]s ASARCO performs the work necessary to implement the mine reclamation component of the MARP, it will be reimbursed from the Account for its

actual and necessary expenses in performing said work." (Id. at ¶ 6.h.). Consequently, any money Seaboard deposited into the account was used to reimburse ASARCO for its future reclamation work. This payment amounts to a direct payment to ASARCO and is neither required by the Mission Bonds nor subject to indemnification by Grupo México.

For each of the above reasons, the Court dismisses Seaboard's breach of contract claim.

**C. Unjust Enrichment**

A party is unjustly enriched when it has retained some benefit or money that in justice and equity belongs to another. Trustmark Ins. Co. v. Bank One, Ariz., N.A., 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ct. App. 2002) (citation omitted). In order to plead a prima facie case for unjust enrichment, the plaintiff must sufficiently plead five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification for the enrichment and the impoverishment, and (5) the absence of a legal remedy. Id. But, "if there is 'a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" Id. at 542, 48 P.3d at 492 (quoting Brooks v. Valley Nat'l Bank, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976)); see Johnson v. Am. Nat'l Ins. Co., 126 Ariz. 219, 223, 613 P.2d 1275, 1279 (Ct. App. 1980) (stating that the "principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties 'however harsh the provisions of such contracts may seem in the light of subsequent happenings.'" (quoting Durham Terrace, Inc. v. Hellertown Borough Auth., 148 A.2d 899, 904 (Pa. 1959))). Specifically, a party is not entitled to a remedy on the theory of unjust enrichment if it receives the benefit of the agreed-upon contractual relationship. Brooks, 113 Ariz. at 174, 548 P.2d at 1171; see Adelman v. Christy, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (explaining that the language often cited from Brooks is misleadingly broad, and that even if there is a contractual relationship, a party can pursue a claim of unjust enrichment as an alternative theory of relief if it has not received the benefit of the contractual bargain).

Seaboard's argument for its claim of unjust enrichment relies on the decision in Adelman. (Dkt. 138 at 12-13). In Adelman, the court ruled on cross-motions for summary judgment. 90 F. Supp. 2d at 1036. The parties allegedly had a contractual agreement for the plaintiff to provide a service to the defendant in exchange for royalties to be paid when fixed sales levels were met. Id. at 1036-37. The plaintiff alleged that she reasonably performed her part of the bargain. Id. at 1038. The defendants, however, allegedly terminated the contract and did not compensate her for the services she provided. Id. at 1037, 1045. The court held that even though there was a contractual relationship, the plaintiff's unjust enrichment claim could proceed as an alternative theory of recovery because the plaintiff had not received the benefit of her bargain. Id. at 1045.

In contrast, Grupo México's argument relies on Trustmark. (Dkt. 137,8:1-13; Dkt 141 at 9-11). In Trustmark, the parties had a contractual agreement where the defendant, a bank, held the funds of the plaintiff, a customer, under specific conditions. 202 Ariz. at 537-38, 48 P.3d at 487-88. As soon as the parties began performing under the contract, both parties received the benefit of the contract: the plaintiff had a facility to hold and protect its assets, and the defendant was able to collect the interest off the plaintiff's money. The plaintiff brought the unjust enrichment claim on the grounds that the defendant did not transfer the money as required by their agreement, and thus was able to benefit by collecting interest to which the defendant was not entitled. Id.

The Trustmark court held that the trial court correctly dismissed the unjust enrichment claim as a matter of law. Id. at 543, 48 P.3d at 493. The court reasoned that if there was a contractual agreement which bound the defendant, then the plaintiff had a legal remedy to pursue damages. Id. at 542, 48 P.3d at 492. If there was not a contractual agreement, then the defendant was not obligated to transfer the funds, and thus the defendant by definition could not be unjustly enriched. Id. In addition, the court distinguished Adelman on the grounds that Brooks was on point and controlling, whereas Adelman was merely persuasive. Id. at 543, 48 P.3d at 493.

While Seaboard argues that it did not receive the benefit of its bargain, and thus, an unjust enrichment claim is proper, Seaboard in fact benefitted by the receipt of premiums from ASARCO. Seaboard bargained for conditional performance by Grupo México — in exchange for issuing the bonds, Seaboard would receive the payment of premiums and the conditional promise by Grupo México to indemnify. The agreement with Grupo México contemplated no immediate benefit to Seaboard for issuing the bonds other than the premium payments. As the letter agreement contemplated only conditional performance by Grupo México, Seaboard's citation to <u>Adelman</u> is inapposite. In that case, an unjust enrichment claim was permitted despite the existence of a contract because the plaintiff allegedly had not received the benefit of the bargain. <u>Adelman</u>, 90 F. Supp. 2d at 1045. The parties had bargained for reciprocal performance in which performance by the plaintiff triggered an immediate duty to perform by the defendant. In the present case, Seaboard bargained for conditional, rather than reciprocal performance. Seaboard's performance of issuing the Mission Bonds triggered no immediate duty by Grupo México. Only upon a breach by ASARCO of its reclamation obligations under the Mission Bonds would Grupo México have a duty to indemnify Seaboard.

From the pleadings it is clear that there was a contractual relationship between Seaboard and Grupo México, as evidenced by the letter agreement. Both <u>Trustmark</u> and <u>Brooks</u> are decisions by Arizona courts addressing an issue of state law, and thus, are controlling over the district court opinion in <u>Adelman</u>. Following their reasoning, due to the contractual relationship between the parties, Seaboard has a legal remedy in the form of a breach of contract claim. Therefore, the doctrine of unjust enrichment does not apply. Seaboard fails to plead all of the necessary elements of an unjust enrichment claim, and thus, the Court dismisses Seaboard's unjust enrichment claim.

**D.    Leave to Amend**

Having concluded that Seaboard has failed to state a claim either for breach of contract or unjust enrichment, the Court in its discretion finds that dismissal without leave to amend is proper because it is clear that the complaint cannot be saved by any amendment.

Polich, 942 F.2d at 1472. Pursuant to Rule 15, amendments should be "freely given" in absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Based upon the record before the the Court and the parties briefing, there was never any declaration by the BIA that ASARCO was in default of its reclamation obligations. Without such a declaration of default, any amendment as to the breach of contract claim would be futile. Similarly, any amendment to Seaboard's unjust enrichment claim would be futile because there is a contractual relationship between the parties that provided Seaboard a legal remedy, and Seaboard received the benefit of its bargain in the form of premium payments and Grupo México's conditional promise to indemnify. No amount of amending the complaint will be able to cure the defects in the claims.

## CONCLUSION

The relationship between a surety and its indemnitor is precisely created by contract. If one of those parties acts outside of the terms of the contract, the benefit of certainty that is inherent in contracts is lost. Seaboard failed to follow the express terms of its contracts, which Grupo México relied upon. Seaboard made a strategic business decision to pay the $1.3 million dollars in order to reduce its exposure of the potential for future risk, not because it was compelled by contractual obligations.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Grupo México's Motion to Dismiss (Dkt. 136) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Seaboard Surety's Second Amended Complaint (Dkt. 133) is dismissed with prejudice.

///

///

///

1

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment dismissing this

2  action with prejudice for failure to state a claim upon which relief can be granted.  The Clerk

3  shall terminate this case.

4      DATED this 14th day of December, 2009.

5

6

_____
                    Stephen M. McNamee
7                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28